## OYER AND TERMINER.

### ONEIDA COUNTY, JUNE, 1820.

The People
vs. } MURDER.
John Tuhi.

Before Chief Justice *Thompson.*

A sudden affray is no excuse where the force is violent and the weapon an ax.

The prisoner was indicted for the murder of his brother, Joseph Tuhi, on the 3d of May, 1820. The facts, as they appeared in the testimony, were, that the father of the deceased and the prisoner were dead, and their mother had become the wife of Gideon Harry; John lived with his mother and step father, and Joseph had for some time previous to his death, lived with his grandmother. John is about seventeen years old; Joseph was a little more than a year older, and considerably stronger than John. The last day of the last election (first of May last) Joseph came home, and Gideon, the two brothers, and their mother concluded to go to Clinton, where the election was held that day. Before they sat out they drank some whiskey, on the way some more, and more after they arrived at Clinton village. Towards evening

they sat out to return ; the mother was then drunk ; Gideon and the brothers partially intoxicated.    When they arrived within about half a mile of their home, (the whole distance they went was about two miles and a half,) the brothers, who had been before, returned to Gideon and their mother, and John said that Joseph had dunned him for three cents which he owed him, and threatened to whip him if he did not pay him.    Gideon tried to pacify Joseph, and went with John into a house on the road to borrow the money to pay the debt, but did not succeed. Some hard words were used by Joseph, but nothing more occurred between the brothers on that subject.    About half an hour after, they arrived at home ; Gideon and his wife went out of the house, a little distance from the door, and left Joseph and John sitting near the fire.    There was no other person in the house, and there was an ax not far from John ; the distance between the brothers was six or eight feet.    Directly after they had left the house, Gideon heard a noise like scuffling and the falling of chairs, but no voice.    He went in, and found Joseph lying upon the floor near where John sat, and John in the act of striking his head with the ax.    The four remained in the house until morning.    The mother (too drunk to know or do any thing,) and John slept, Gideon sat up and took care of Joseph, and went early in the morning to procure medical assistance.    The mother and John took care of Joseph while he was gone.    The wounds were found to be mortal, and no surgical operation was attempted.    Joseph died on the morning of the 3d of May.    He had four deep wounds upon his head, one over one of his eyes, and the others on the top and back of his head.    John did not attempt to escape ; was taken into custody by the Indians, and delivered by them to the officer who went to arrest him.    After Joseph was

dead he seemed much affected, said he supposed he had killed him, but did not know it. The principal witnesses were Gideon and the mother, both of whom testified with remarkable candour, firmness, impartiality, and considerable intelligence. The counsel for the prisoner made an able and ingenious defence ; they contended, that the facts justified the inference, that the assault which ended so fatally, was made by Joseph. His superior strength, the disposition he had manifested, to quarrel, his threat of chastising John if payment of the three cents were not made, the fact that he must have arisen from his seat and advanced towards John led to this conclusion. And they maintained, that if Joseph did attack John, and he, to defend himself, in the suddenness of the affray, and in the heat of blood, seized and used the ax so as to occasion the death of the assailant, the crime of which he was guilty was manslaughter, and not murder.

The Chief Justice observed, that there was much probability in the supposition that Joseph did advance towards John; and possibly with a manifest design to chastise him; but it was insisted, that as he was entirely unarmed, and John in no danger of death or enormous injury, what he did, even if for self defence, was excessive, unnecessary, and unreasonable.

His honour observed, that every killing was supposed to be felonious, and it lay upon the party charged to prove it not so. If one, with a sword drawn, makes a pass at another whose sword is undrawn, and a combat ensues, if the former be killed, it will only be manslaughter in the latter; but if the latter fall, it will be murder in the former. Kel. 61. Chit. C. L. v. iii. p. 167.— Where the *instrument* used is such a one as might reasonably be presumed to cause death, even in a sudden affray, there the killing would be murder, as where the

See Cr. L. Cas. vol. i. p. 266.

master struck his servant with an iron bar whereof he died, it was held murder. Kel. 64. In the case now before the court, it was obvious the instrument used was such a one as was likely to, and actually did produce death.

It appeared by the testimony, that Joseph was entirely unarmed, and his honor gave it as his opinion, that if he had arisen from the place where he was sitting, for the purpose of chastising John, not having any weapon in his hands, and John had seized the ax and struck Joseph in the manner it appeared by the evidence he did, it would be murder, the weapon being unlawful, and the use of it, in the manner related by the witnesses, was evidence of malice. Where the weapon used is a deadly one, and the force applied such as likely to produce death, the books all agree it is murder. That the suddenness of the affray, as contended for by the counsel for the prisoner, could not avail him, where the force used by the prisoner was violent, and the weapon an ax.

The jury found the prisoner guilty of murder; and he was executed in pursuance of his sentence.

*ONEIDA COUNTY, June, 1820.*

The People v. Tuhi.

*Provocation is no answer to proof of express and independent malice. 1 East P. B. 224.*